Approved: _COURTNEY LAURA HEAVEY_
COURTNEY LAURA HEAVEY
Assistant United States Attorney

Before: HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :   ~~SEALED~~ COMPLAINT

             - v. -                :   Violation of
                                       21 U.S.C. § 846

MARCO VARGAS a/k/a "Papo";         :   COUNTY OF OFFENSE:
JOSE W. DIAZ, a/k/a "Willie";          WESTCHESTER
and JOSE S. DECENA                 :
                                       19MJ6366
             Defendants.           :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

Jeff Ramirez, being duly sworn, deposes and says that he is a Task Force Officer working with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE

1. From at least on or about July 2, 2019, to July 8, 2019, in the Southern District of New York and elsewhere, JOSE W. DIAZ, a/k/a "Willie," JOSE S. DECENA, and MARCO VARGAS, a/k/a "Papo," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that JOSE W. DIAZ, a/k/a "Willie," JOSE S. DECENA, and MARCO VARGAS, a/k/a "Papo," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance involved in the offense was 1 kilogram and more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United

States Code 841(b)(1)(A) and 500 grams and more of a mixture and substance containing a detectable amount of cocaine in violation of Title 21, United States Code 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4. I have been a Task Force Officer with the DEA for 6 months, and for the past 12 years I have been a police officer with the White Plains Police Department. I have been personally involved in the investigation of this matter. This affidavit is based upon that experience, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my conversation with a DEA agent ("Agent-1"), I know that:

a. A confidential informant ("CI")[1] who has been providing information to the DEA, told Agent-1, in substance and in part, that an individual ("Individual-1") told the CI that on or about July 2, 2019, Individual-1 met with a man called "Papo," who was later identified as MARCO VARGAS a/k/a "Papo," a defendant, in the vicinity of 187 South Broadway in Yonkers, New York.

b. Individual-1 informed the CI that VARGAS had introduced him to a man called "Willie," who was later identified as JOSE W. DIAZ, a defendant. VARGAS identified DIAZ as someone who could supply Individual-1 with heroin.

---

[1] The confidential informant (the "CI") has an extensive criminal history involving narcotics distribution offenses and an illegal reentry charge, and has been assisting law enforcement in exchange for assistance with his immigration status. The information that the CI has provided in connection with this investigation has proven reliable, and has been independently corroborated by other evidence, including physical surveillance of the controlled purchase by law enforcement agents directly.

Individual-1 told the CI, in substance and in part, that DIAZ was willing to sell 1 kilogram of heroin to Individual-1 the following day and the CI agreed to go with Individual-1 to collect the heroin.

      c.    The CI explained that Individual-1 planned to meet DIAZ in the vicinity of Herriot Street and Groshon Avenue in Yonkers, New York, and said that DIAZ would be driving a Jeep Patriot.

      d.    The CI had a recording device, which he was instructed to use when he next met with Individual-1 and DIAZ the following day.

    6.    Based on my conversation with Agent-1, I know that:

      a.    On or about July 3, 2019, Agent-1 and task force officers went to the area of Herriot Street and Groshon Avenue to conduct surveillance. While conducting surveillance, Agent-1 observed the CI drive up and park his car in the vicinity of Herriot Street and Groshon Avenue.

      b.    Agent-1 also observed a Jeep Patriot, with New York registration and license plate number JCT8902, parked around the same area, and was able to see the driver of the car, who he was later able to identify as JOSE W. DIAZ, a defendant.

      c.    Agent-1 then saw an individual that the CI later identified as Individual-1 get out of the passenger side of the CI's car and walk over to and then get inside of the Jeep Patriot.

      d.    Agent-1 then observed Individual-1 exit the Jeep Patriot and appear to be holding a dark grey plastic bag. Individual-1 then walked over to the CI's car and placed the plastic bag in the trunk of the CI's car.

    7.    The CI subsequently drove to a pre-determined meeting location, where task force officers, including myself, opened the trunk of the CI's car and retrieved the dark grey plastic bag that Individual-1 had placed in the CI's trunk.

    8.    Inside the dark grey plastic bag was a brick package with orange coloring on it. The substances inside the package later field-tested positive for the presence of heroin, and weighed approximately 1 kilogram.

9.  Based on my conversation with Agent-1, I know that on or about July 3, 2019, after Individual-1 exited the Jeep Patriot, Agent-1 and other task force officers followed the Jeep Patriot, which drove to 1235 Grand Concourse in the Bronx, New York. Based on my conversation with a task force officer ("TFO-1"), I know that TFO-1 observed a man, later identified as JOSE W. DIAZ, the defendant, get out of the car and enter 1235 Grand Concourse. On or about July 8, 2019, law enforcement went to 1235 Grand Concourse Apartment 303 and a woman answered who identified herself as the wife of DIAZ and confirmed that DIAZ lived there.

10. Based on my conversation with Agent-1, I know that on or about July 5, 2019, the CI told Agent-1, in substance and in part, that he was planning to meet Individual-1 and MARCOS VARGAS a/k/a "Papo", a defendant, that evening in the area of Post Street and South Broadway in Yonkers, New York. According to the CI, VARGAS was going to introduce the CI and Individual-1 to other individuals who were looking to sell a kilogram of cocaine and heroin. The CI was equipped with a recording device to use for when he next met with Individual-1 and VARGAS, and used such device at the subsequent meeting.

11. Based on my conversation with Agent-1, I know that Agent-1 also debriefed the CI and the CI told Agent-1 the following, in sum and substance:

a.  On or about July 5, 2019, the CI picked up Individual-1 and they drove to the vicinity of Post Street and South Broadway in Yonkers to meet VARGAS.

b.  VARGAS came to the vicinity of Post Street and South Broadway and told the CI and Individual-1, in substance and in part, that he could arrange for them to purchase a kilogram of cocaine and heroin. VARGAS then proceeded to make some telephone calls.

c.  CI observed a Toyota Corolla drive to the vicinity of Post Street and South Broadway. VARGAS then introduced the CI and Individual-1, to the driver of the Toyota Corolla, who was later identified as JOSE S. DECENA, the defendant.

d.  The CI and Individual-1 got into the Toyota Corolla and DECENA discussed giving Individual-1 and the CI a kilogram of heroin on consignment. DECENA then gave Individual-

4

1 a small plastic baggy, with a tie at the end, which Individual-1 then gave to the CI, who secured it. The CI subsequently provided the plastic baggy to law enforcement, and the substance field-tested positive for heroin.

   e. During the time that DECENA, Individual-1, and the CI were discussing the sale of a kilogram of heroin, VARGAS was standing just outside of the Toyota Corolla.

   f. After DECENA provided Individual-1 and the CI with the small plastic bag, Individual-1 and the CI got out of the Toyota Corolla and DECENA drove off.

   g. The CI and Individual-1 then met up with VARGAS, who called another individual. The CI later observed a Honda CRV arrive at the vicinity of South Broadway and Post Street. VARGAS then introduced the CI and Individual-1 to a man who was in the passenger side of the Honda CRV ("Individual-2").

   h. The CI, Individual-1, Individual-2, and VARGAS then proceeded to discuss the terms under which Individual-2 would give Individual-1 and the CI a kilogram of cocaine. Individual-2 agreed to give VARGAS $2,000 for arranging the sale and Individual-1 agreed to give VARGAS $1,000. Individual-2 then said he would be back with the kilogram of cocaine and he left.

  12. The CI then called Agent-1 to tell him about the above-described meetings. Law enforcement agents including myself then went to the vicinity of Post Street and South Broadway to conduct surveillance.

  13. While I was conducting surveillance in the vicinity of Post Street and South Broadway on or about July 5, 2019, I observed the following:

   a. A Toyota Corolla arrived to the area and parked on the corner of Post Street and South Broadway. VARGAS and Individual-1 were engaged in a brief conversation.

   b. VARGAS then walked over to and got into the passenger seat of the Toyota Corolla. VARGAS later got out of the vehicle and was holding a blue bag, which he then gave to Individual-1. Individual-1 then placed the blue bag in the trunk of the CI's car.

   c. Later on, a maroon Honda CRV arrived and

parked on Post Street. A man that the CI later identified as Individual-2 exited the Honda CRV from the passenger side and engaged Individual-1 in conversation.

        d. Individual-1 and Individual-2 then walked over to the Honda CRV. Individual-2 reached into the Honda CRV and grabbed a shoebox, which he then handed to Individual-1. Individual-1 then walked to the CI's car and placed the box in the trunk of the CI's car. During this time, VARGAS remained in the vicinity.

        e. The CI then drove away to a pre-determined meeting location, where myself and other task-force officers opened the trunk of the CI's car and retrieved the shoebox that Individual-1 had placed in the trunk and the blue bag that Individual-1 had placed in the trunk.

    14. Inside the recovered shoebox was pink tissue paper and underneath the tissue paper were several pellets containing a white substance. The substances were later field-tested, and tested positive for the presence of cocaine and weighed approximately 1.2 kilograms.

    15. Inside the recovered blue bag was a brick square package, bound in brown tape. The substances inside were later field-tested and tested positive for the presence of heroin and weighed approximately 1 kilogram.

    16. The CI recorded the above-described meetings on or about July 5, 2015. Based on my conversation with Agent-1, I know that the CI told Agent-1, that the CI planned to meet Individual-2 later that evening at around 262nd Street and Broadway, so that Individual-2 could provide the CI another kilo of cocaine.

    17. On or about July 5, 2019, I, along with DEA agents, conducted surveillance on South Broadway and Post Street in Yonkers, New York. I observed the CI drive to Post Street and South Broadway and pick up VARGAS in the CI's car. I then observed the CI and VARGAS drive to 262nd Street and South Broadway, where they had arranged to meet with Individual-2.

    18. I then saw the CI and VARGAS meet up with a maroon Honda CRV, which was the same Honda CRV that I had seen Individual-2 in earlier that day in the vicinity of Post Street and South Broadway. The CI and the Honda CRV then drove to the vicinity of 254th Street and Broadway, where they parked on the

6

side of the street.

19. Task force officers conducting surveillance, including myself, followed the CI and the Honda CRV to the vicinity of 254th Street and Broadway to continue surveillance. Once we arrived, a task force officer on the surveillance team ("TFO-2") observed Individual-2, exit the passenger side of the Honda CRV and get into the CI's car.

20. The CI recorded the meeting with Individual-2. Agent-1 also debriefed the CI after the meeting. Based on my conversation with Agent-1, I know that:

    a. The CI subsequently told Agent-1, in substance and in part, that during the time that VARGAS and Individual-2 were in the CI's car, the three discussed the sale of the second kilogram of cocaine to the CI. Specifically, the CI said that Individual-2 stated, in substance and in part, that he had the second kilogram of cocaine in the Honda CRV and he would provide it to the CI on consignment, but he wanted to watch the CI sell the cocaine to a customer so that Individual-2 could then collect the money.

    b. As Individual-2 exited the CI's car, law enforcement approached the Honda CRV.

    c. Based on my conversation with other DEA agents, I know that agents informed that driver of the Honda CRV of his Miranda rights, and he consented to the search of the car. Underneath the driver's seat of the Honda CRV, agents found a white plastic bag, inside of which was a black plastic bag, and inside of that were numerous pellets. The substances inside the pellets were later field-tested and tested positive for the presence of cocaine and weighed approximately 1 kilogram.

21. Based on my conversation with other task force officers, I know that on or about July 8, 2019, task force officers were conducting surveillance on the Jeep Patriot with New York registration and license plate, JCT8902, that was parked outside of 1235 Grand Concourse, and which agents had previously seen DIAZ driving on or about July 3, 2019.

22. Task force officers conducting surveillance saw the Jeep Patriot drive to the area of Ellis Avenue and Zerega Avenue. Task force officers then observed DIAZ get out of the driver's side of the car, meet with a female and walk into 2366

Ellis Avenue. DIAZ then left 2366 Ellis Avenue carrying a black plastic bag that appeared to be weighted. DIAZ then got into the Jeep Patriot and later drove to Jackson Street and Herriot Street, where he met with Individual-1.

23. Task force officers then observed DIAZ and Individual-1 walk to the Jeep Patriot. DIAZ reached into the back seat of the vehicle, behind the driver's side and grabbed a black plastic bag that was squared off. DIAZ and Individual-1 then walked on Herriot Street towards Groshen Street and DIAZ then handed Individual-1 the black bag.

24. Task force officers then observed VARGAS and DECENA on the sidewalk of Herriot Street, just east of Jackson Street.

25. Law enforcement subsequently recovered the black bag from Individual-1, which was field tested and tested positive for heroin, and weighed approximately 1 kilogram.

26. Law enforcement then arrested MARCO VARGAS a/k/a "Papo"; JOSE W. DIAZ, a/k/a "Willie"; and JOSE S. DECENA.

27. Based on my conversation with Agent-1, I know that Agent-1 was able to identify JOSE W. DIAZ a/k/a "Willie" as the individual he has also seen on or about July 3, 2019. DIAZ also had a New York driver's license on him at the time of his arrest.

28. Based on my conversation with Agent-1, I know that the CI was able to identify JOSE S. DECENA, a defendant, as the individual who had given Individual-1 the heroin on or about July 5, 2019. DECENA also had a New York driver's license on him at the time of his arrest.

29. Based on my conversation with Agent-1, I know that the CI was also able to identify MARCO VARGAS a/k/a "Papo" as the individual the CI had seen on or about July 5, 2019. I was also able to identify VARGAS as one of the men I had seen while conducting surveillance on or about July 5, 2019.

WHEREFORE, deponent prays that MARCO VARGAS a/k/a "Papo"; JOSE W. DIAZ, a/k/a "Willie"; and JOSE S. DECENA, the defendant, be imprisoned, or bailed, as the case may be.

JEFF RAMIREZ
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
9th day of July, 2019

HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9